**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02776-NYW

PRIYA N. WERAHERA,

     Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO,
ANN THOR, in her official and individual capacities, and
STEVEN ANDERSON, in his official and individual capacities,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the court on Defendants the Regents of the University of Colorado ("Board of Regents" or "Board"), Ann Thor ("Ms. Thor" or "Defendant Thor"), and Steven Anderson's ("Mr. Anderson" or "Defendant Anderson" and, collectively, "Defendants") Motion to Dismiss (or "Motion"), [Doc. 23, filed December 23, 2021].[1]  This court concludes that oral argument would not materially assist in the resolution of this matter.  Accordingly, upon careful review of the Motion and associated briefing, the docket, and applicable case law, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

---

[1] Originally, the court presided over this action pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated December 1, 2021.  *See* [Doc. 15]; *see also* [Doc. 14].  On July 22, 2022, Judge Nina Y. Wang was appointed as a United States District Judge and retained assignment to this action as the presiding judge.  [Doc. 37].

**FACTUAL BACKGROUND**

The following facts are drawn from the operative Complaint and Demand for Trial by Jury ("Complaint"), [Doc. 1], and taken as true for the purposes of the instant Motion.  This action arises from the employment of Priya N. Werahera ("Dr. Werahera" or "Plaintiff") with the University of Colorado ("CU" or the "University").  *See* [*id.*].  Dr. Werahera—who was born in Sri Lanka, is a member of the Buddhist "faith/religion," and was 62 years old at the time of filing the Complaint—has been employed with the University since 1992.  [*Id.* at ¶¶ 1, 22–24].  He currently is employed as a Research Associate Professor and holds joint appointments within the Pathology and Bioengineering Departments located within the University's School of Medicine at CU's Anschutz Campus in Aurora, Colorado.  [*Id.* at ¶¶ 1, 22–24].  Dr. Werahera  is also a member of the University of Colorado Cancer Center ("UCCC") and a Senior Member of the Institution of Electrical and Electronics Engineers ("IEEE").  [*Id.* at ¶ 41].

Defendant Thor holds the titles of Professor of Pathology and Chair of CU's Pathology Department, [*id.* at ¶ 9]; and Defendant Anderson holds the title of Vice Chair for Research of CU's Pathology Department, [*id.* at ¶ 13].  Throughout Dr. Werahera 's employment, Defendants Thor and Anderson have had supervisory authority over Plaintiff, including decision-making authority as to Plaintiff's continued employment with the University.  [*Id.* at ¶¶ 11, 15].

Dr. Werahera's work at the University involves significant research and development of technology to detect prostate cancer.  [*Id.* at ¶ 22].  For most of his employment, Dr. Werahera's salary has been supported through public grants and private funding; and the University has contributed partially to Plaintiff's salary for only five years, when public grant funding was lost.  [*Id.* at ¶¶ 56–57].  Dr. Werahera alleges that, beginning in 2014, Defendants Thor and Anderson

"contended that there had been a longstanding perceived 'mismatch' of goal/focus alignment[ ] between Plaintiff's academic work and the Pathology Department, and that Plaintiff had failed to secure sufficient external funding to support Plaintiff's research long-term." [*Id.* at ¶ 58]. Around this time, Defendants Thor and Anderson allegedly removed Dr. Werahera from the Pathology Department's payroll, which "had been briefly paying 30% of his annual salary." [*Id.* at ¶ 60]. However, Plaintiff was ultimately able to secure full salary support through other officials at the University. [*Id.* at ¶ 61].

In July 2018, a colleague of Plaintiff's at the University, Dr. David Crawford, began to transition from his full-time faculty opposition to an emeritus professor position. [*Id.* at ¶ 63]. As part of his transition, Dr. Crawford allegedly advised the University that the cancer research work that he and Plaintiff had already started, as well as the funding for that research, must continue under Plaintiff's direction and management. [*Id.* at ¶¶ 64–65]. Dr. Crawford also allegedly "directed that Plaintiff be the next recipient of" an endowment named after Dr. Crawford, the E. David Crawford Endowment, which allegedly was valued at nearly two million dollars as of July 2018. [*Id.* at ¶ 66]. According to Plaintiff, Dr. Crawford's directives "were and remain consistent with the intent of" the donors who have contributed to prostate cancer research, including the type of research performed by Plaintiff; and CU is "obligated to ensure that the funds dedicated to the progress of prostate cancer research be used in accordance with donor intent." [*Id.* at ¶¶ 67–70]. Dr. Crawford also included his directives in a written proposal (the "Proposal") that he presented to the University in December 2018. [*Id.* at ¶¶ 71–72].

However, in January 2019, Defendant Thor notified Dr. Werahera that he would not be granted access and budgetary management of the remaining donor funds, at that point totaling

approximately $500,000, and he likewise would not be appointed Endowed Chair of the E. David Crawford Endowment.  [*Id.* at ¶¶ 75–78, 82].  Following a meeting in April 2019, the Director of the UCCC ultimately transferred approximately $30,000 of the remaining research funding to Dr. Werahera.  [*Id.* at ¶ 85].  When Dr. Werahera inquired as to the status of the remaining $470,000 of donor funds, the Director of the UCCC allegedly advised Dr. Werahera that he would not be granted control of the remaining funds "because Defendant Thor 'did not want Plaintiff to get the funds.'"  [*Id.* at ¶ 86].  Dr. Werahera alleges that Defendant Thor "explicitly" told Dr. Lucia, another faculty member in the Pathology Department, that Defendant Thor "was very upset that Dr. Crawford was nominating Plaintiff as the next recipient of his endowment as opposed to Dr. Lucia, who is a younger, white male."  [*Id.* at ¶ 88].

Separately, Dr. Werahera alleges that "[o]n one occasion, Defendant Anderson entered a reserved conference room while Plaintiff was giving a presentation, and . . . interrupted Plaintiff and began questioning Plaintiff in a menacing and authoritative manner."  [*Id.* at ¶ 98].  Dr. Werahera further claims that Defendant Anderson has "publicly ridiculed Plaintiff and projected his animosity towards Plaintiff to other members of the Pathology Department . . . by simply stating that he does not like Plaintiff."  [*Id.* at ¶¶ 99–100].

In January 2021, Dr. Werahera attended a meeting with Defendant Anderson for Plaintiff's annual performance evaluation, during which time Mr. Anderson told Plaintiff that "he was doing well and that he had once again met expectations."  [*Id.* at 102].  Dr. Werahera also signed a version of the evaluation confirming his understanding that he "Meets Expectations."  [*Id.* at ¶ 103].  Several weeks after that meeting, however, Dr. Werahera Defendant Anderson informed Plaintiff that he would be changing Plaintiff's overall evaluation to a "Below Expectations" rating.  [*Id* at

¶ 106]. According to Dr. Werahera, "[t]here were no prior discussions, warnings, or implications as to this sudden change nor was there any indication that that Plaintiff should have received this lower score." [*Id.* at ¶ 107]. Rather, Defendant Anderson claimed that he "mistakenly omitted marking a specific score on the form and that Plaintiff's major issue related to 'the development of a sustained course of funding for a research program.'" [*Id.* at ¶ 108].

Dr. Werahera alleges that Defendants Thor and Anderson have refused to address Plaintiff's inquiries regarding Defendant Anderson's authority to make this type of change to Plaintiff's performance evaluation "after having already informed Plaintiff that . . . [he] had met expectations." [*Id.* at ¶ 110]; *see also* [*id.* at ¶ 116]. Dr. Werahera also alleges that, in response to his inquiries regarding the "purported funding issues," Defendant Thor has stated that such issues "are beyond her purview." [*Id.*].

In addition, Dr. Werahera asserts that his "situation is starkly juxtaposed with his white male counterparts, whose careers within the department have not been jeopardized and requirements that they obtain funding as a basis for their salary have not been demanded." [*Id.* at ¶ 121]. Dr. Werahera also claims that he "has been held to a different standard than that of many of his colleagues," including Defendant Anderson and two other individuals, Dr. James Lambert and Dr. Kathleen Torkko. [*Id.* at ¶¶ 122–25].

Believing his rights have been violated, Dr. Werahera asserts four causes of action in the Complaint:

(1)     Discrimination based on national origin, race, and religion, as well as hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), against the Board of Regents (Count I);

(2)     Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), against the Board of Regents[2] (Count II);

(3)     Violation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, against all Defendants (Count III); and

(4)     Violation of equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, against all Defendants (Count IV).

[*Id.* at ¶¶ 130–50].

## PROCEDURAL HISTORY

This case was initiated on October 15, 2021, when Plaintiff filed the Complaint. *See* [Doc. 1]. On December 23, 2021, Defendants filed the instant Motion to Dismiss wherein they seek dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See* [Doc. 23]. Plaintiff responded to the Motion on January 28, 2022, *see* [Doc. 30], and Defendants replied on February 11, 2022, *see* [Doc. 32]. Given the procedural posture of this case, as discussed further below, this court finds that certain issues are better reserved for adjudication in the context of Defendants' Motion for Summary Judgment, [Doc. 38, filed August 1, 2022]. Accordingly, this court only passes substantively on certain arguments raised by the instant Motion to Dismiss.

---

[2] In the Complaint, Dr. Werahera purports to assert Count II against "Defendant CU." [Doc. 1 at 24]. However, CU is not named as a defendant in this action. *See* [*id.* at 1]. Dr. Werahera also expressly alleges that Defendant Board is his employer, not the University. *See* [*id.* at ¶ 8 ("Defendant Board, as CU's governing body, meets the definition of an 'employer' under the applicable statutes, including Title VII and the ADEA.")]. For the purposes of the instant Motion to Dismiss, the court presumes that Plaintiff's second claim is asserted against the Board of Regents.

## LEGAL STANDARDS

### I.  Federal Rule of Civil Procedure 12(b)(1)

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim.  Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Assn., Inc.,* 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (citation omitted).

### II.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In deciding a motion under Rule 12(b)(6), the ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forsgren*, 478 F.3d at 1160.  Thus, ordinarily, a court is confined to the four corners of a pleading in determining a motion to dismiss pursuant to Rule 12(b)(6), taking well-pleaded facts as true.  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Should the court receive and consider materials outside the complaint, it may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence.  *See Alexander v. Okla.*, 382 F.3d 1206, 1214 (10th Cir. 2004).  However, under Tenth Circuit precedent, a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997)).

## ANALYSIS

As discussed above, Plaintiff asserts four claims in this action: (1) discrimination based on disparate treatment and hostile work environment under Title VII, against the Board of Regents (Count I); (2) age discrimination under the ADEA, against the Board of Regents (Count II); (3) due process deprivation in violation of the Fourteenth Amendment, against all Defendants (Count III); and (4) equal protection deprivation in violation of the Fourteenth Amendment, against all Defendants (Count IV). *See* [Doc. 1].

In the Motion, Defendants seek to dismiss Plaintiff's claims for failure to state a claim and on immunity grounds. Specifically, they argue that insofar as Count I is based on events occurring in 2019, it should be dismissed on the basis that Plaintiff has failed to exhaust administrative remedies. Defendants further contend that Plaintiff has failed to state a claim for disparate treatment or a hostile work environment under Title VII; and they seek dismissal of Counts II, III, and IV based, *inter alia*, on Eleventh Amendment and qualified immunity grounds. *See* [Doc. 23].

The court will first address the claims asserted against the Board of Regents under Counts I–IV, and then turn to the claims against Defendants Anderson and Thor under Counts III and IV.

## I.    Count I Against the Board of Regents

Dr. Werahera's cause of action under Count I asserts a Title VII discrimination claim based on two theories: disparate treatment and hostile work environment. *See* [Doc. 1 at 23]. The court will address each theory in turn.

### A.    Disparate Treatment

In determining whether a Title VII disparate treatment claim is plausibly alleged, courts do not require plaintiffs to establish a prima facie case. Instead, courts consider whether plaintiffs

have set forth a plausible claim in light of the elements of their claim. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that [a p]laintiff establish a prima facie case in her complaint, the elements of [the] alleged cause of action help to determine whether [a p]laintiff has set forth a plausible claim."). To state a cognizable disparate treatment claim, the pleading must aver facts, if taken as true, allow a factfinder to conclude that (1) Plaintiff is a member of a protected class, (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007); *see also Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged.").

Defendants argue, first, that Plaintiff's discrimination claim is time-barred insofar as the claim is based upon Plaintiff's (1) not being granted access to donor funds and (2) not being appointed Endowed Chair, because Dr. Werahera did not file an Equal Employment Opportunity ("EEO") charge within 300 days of when those incidents occurred.[3] *See* [Doc. 23 at 3–4]. Dr. Werahera disagrees, countering that his claims are timely on grounds that the "continuing violation doctrine" applies[4]—specifically, that "the statute of limitations is not measured from the date on

---

[3] It is appropriate to recognize that timely filing of a charge of discrimination is an affirmative defense and not a jurisdictional bar to suit. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181–86 (10th Cir. 2018).

[4] "[T]he continuing violation doctrine . . . 'allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice.'" *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002) (quoting *Morgan v.*

which Plaintiff learned that the donor funds and the chair position would be withheld because Defendants *continue* to withhold these funds for discriminatory reasons and as pretext to harass him and threaten him with termination." [Doc. 30 at 5]. Thus, Dr. Werahera's argument continues, because he "was only notified of his potential termination . . . on February 25, 2021, after questioning" the changes to his performance evaluation, his claim is timely because he filed his Charge of Discrimination approximately two weeks later on March 12, 2021. [*Id.* at 7]. On Reply, Defendants assert that the continuing violation doctrine does not apply to Plaintiff's claims. *See* [Doc. 32 at 1–4].

Second, Defendants argue the only alleged adverse action that falls within the applicable limitations period—that is, Plaintiff's "Below Expectations" rating in his 2020 performance evaluation—"does not amount to an adverse employment action under Title VII." [Doc. 23 at 6–7]. Defendants also points out that Plaintiff continues to be employed by the University. [*Id.* at 7]. In response, Plaintiff contends that although he remains employed, the 2020 performance review has tarnished his "otherwise exemplary employee profile" and is subject to "the looming fear of termination at any moment." [Doc. 30 at 11–12.] On reply, Defendants insist that Plaintiff fails to cite any authority to support his position that his negative performance evaluation constitutes an adverse employment action under Title VII. *See* [Doc. 32 at 4].

***Failure to Exhaust Administrative Remedies.*** Under Title VII, a plaintiff must file a timely employment discrimination charge before filing suit. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *Hansen v. SkyWest Airlines*,

---

*Natl. R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir. 2000) (internal quotation marks omitted)).

844 F.3d 914, 922 (10th Cir. 2016).  The statute sets forth the parameters for filing a charge related

to an unlawful employment practice as follows:

> A charge under this section shall be filed within one hundred and eighty days after
> the alleged unlawful employment practice occurred . . . except that in a case of an
> unlawful employment practice with respect to which the person aggrieved has
> initially instituted proceedings with a State or local agency with authority to grant
> or seek relief from such practice . . . such charge shall be filed by or on behalf of
> the person aggrieved *within three hundred days after the alleged unlawful*
> *employment practice occurred*.

42 U.S.C. § 2000e-5(e)(1) (emphasis added).  This rule "requires a Title VII plaintiff to exhaust

administrative remedies for each individual discriminatory or retaliatory act." *Martinez v. Potter*,

347 F.3d 1208, 1211 (10th Cir. 2003).  Although a plaintiff may allege that numerous

discriminatory or retaliatory acts occurred throughout his term of employment, "only incidents

that took place within the timely filing period are actionable." *Morgan*, 536 U.S. at 114.  In other

words, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful

employment practice' for which administrative remedies must be exhausted." *Lincoln v. BNSF*

*Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018).  The United States Supreme Court ("Supreme

Court" or the "Court") has explained that "[d]iscrete acts such as termination, failure to promote,

denial of transfer, or refusal to hire are easy to identify" because "[e]ach incident of discrimination

and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful

employment practice.'" *Morgan*, 536 U.S. at 114.

Here, there is no dispute that Dr. Werahera filed his EEO charge on March 12, 2021.  *See*

[Doc. 1 at ¶ 20; Doc. 23-1].[5]  Thus, to be timely, each discrete incident of an alleged adverse

---

[5] Defendants attach to the Motion a copy of Plaintiff's Charge of Discrimination as Exhibit A.  *See*
[Doc. 23-1]; *see also* [Doc. 23 at 4 n.1 (arguing that the court may consider the Charge without
converting the instant Motion to Dismiss to a motion for summary judgment)].  Plaintiff references

employment action must have occurred on or after May 16, 2020—which is 300 days before March 12, 2021. *See Lincoln*, 900 F.3d at 1181. Dr. Werahera identifies three actions he contends satisfy the "adverse employment action" element of his discrimination claim: (1) that he has been "prevented from exercising his right to budgetary management of donor funds, which in turn directly affects his ability to continue his" research; (2) that he has "been threatened with termination based upon a fabricated and pretextual reason and is left in inconsistent job expectations and the looming fear of termination at any moment"; and (3) Defendant Anderson altered Plaintiff's 2020 performance evaluation to a "Below Expectations" rating in February 2021. [Doc. 30 at 11–12].

As to the first and second actions, Defendants contend that, based on the allegations in the Complaint, Plaintiff "was notified as early as January 28, 2019, or, at the latest, April 4, 2019, that he would not be given full access to the donor funds and would not be named an Endowed Chair." [Doc. 23 at 4]. Thus, Defendants continue, the only adverse action alleged in the Complaint that occurred after May 16, 2020 (i.e., 300 days before Plaintiff filed the Charge) is the negative performance evaluation. *See* [*id.*]. This court respectfully agrees.

Dr. Werahera does not dispute that he learned in 2019 that he would not receive control of the donor funds or the Endowed Chair. *See* [Doc. 30]. Nor is there any argument that Dr. Werahera should be excused from exhausting his administrative remedies. *See* [*id.*]. Instead, Dr. Werahera

---

the Charge in the Complaint, *see* [Doc. 1 at ¶ 20], and does not object to the document's authenticity. *See* [Doc. 30 at 7 (citing "Defendants' Exhibit A" to support his assertion that he indeed filed the Charge two weeks after February 25, 2021)]. Thus, the court finds it appropriate to consider the document without converting the instant Motion to Dismiss to a motion for summary judgment. *See Jacobsen*, 287 F.3d at 941.

argues that because he has alleged "a continuing course of discrimination," the continuing violation doctrine should be applied to his claim to render actionable any conduct which took place outside the 300-day charge filing window. *See* [*id.* at 5–8]. However, the Supreme Court explicitly rejected Plaintiff's argument twenty years ago when it issued its decision in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). In that case, the Court "abrogate[d] the continuing violation doctrine as previously applied to claims of discriminatory . . . actions by employers, and replace[d] it with the teaching that *each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted*." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (emphasis added) (citing *Morgan*, 536 U.S. at 110–13). The Court also distinguished Title VII discrimination claims— which are based on "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire"—from Title VII hostile work environment claims, which are composed of "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114, 117.[6] Thus, although the continuing violation doctrine *could* apply to Dr. Werahera's Title VII hostile work environment claim,[7] it is inapplicable to his discrimination claim.

---

[6] Indeed, for support, Dr. Werahera cites, *inter alia*, *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003), wherein the Tenth Circuit acknowledged the Supreme Court's holding in *Morgan*. *See Davidson*, 337 F.3d at 1179 ("By eliminating the continuing violation doctrine for discrete discriminatory acts, *Morgan* attempts to resolve the inconsistent and confusing application of the doctrine by the appellate courts."). [Doc. 30 at 6.] In doing so, Plaintiff implicitly acknowledges the distinction between disparate treatment and hostile work environment claims in the applicability of a continuing violation theory.

[7] The court does not pass here on whether the doctrine does, in fact, apply to the circumstances of Plaintiff's hostile work environment claim.

Accordingly, insofar as Plaintiff's Title VII discrimination claim is based on Defendants' refusal to (1) grant Plaintiff access to donor funds or (2) appoint Plaintiff to the Endowed Chair, the court finds that Plaintiff's claim is time-barred for failure to exhaust administrative remedies.

**_Failure to State a Claim._** For his third and final alleged adverse action, Dr. Werahera asserts that Defendants lowered the overall rating in his 2020 performance evaluation. [Doc. 30 at 11]. In conjunction with that assertion, he also claims that he "was only notified of his _potential termination_ . . . on February 25, 2021, after questioning" the alteration of his evaluation. [_Id._ at 7 (emphasis added)]; _see also_ [_id._ at 11–12 ("He has been t*hreatened with termination* based upon a fabricated and pretextual reason and is left in inconsistent job expectations and the looming fear of termination at any moment." (emphasis added))].

For discrimination claims, an adverse employment action "is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." _Hiatt v. Colo. Seminary_, 858 F.3d 1307, 1316 (10th Cir. 2017) (internal quotation marks omitted). Moreover, the Tenth Circuit "liberally defines the phrase 'adverse employment action.' Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, [courts] take a case-by-case approach, examining the unique factors relevant to the situation at hand." _Sanchez v. Denver Pub. Schools_, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted); _see also Burlington Indus., Inc. v. Ellerth_, 524 U.S. 742, 761 (1998) (establishing that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Courts also consider "acts that carry 'a significant risk of humiliation,

damage to reputation, and concomitant harm to future employment prospects.'" *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir. 1996)).   However, employment actions consisting of "mere inconvenience[s] or alteration[s] of job responsibilities . . . will not suffice." *Id.* (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)) (internal quotation marks omitted).   Neither will actions resulting in only "[s]peculative harm[s] . . ." *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001).

Here, Defendants argue that Dr. Werahera's negative 2020 performance evaluation does not constitute an adverse employment action because he remains employed at the University and "a negative performance evaluation, without an associated material change in [ ] employment status, does not amount to an adverse employment action under Title VII." [Doc. 23 at 6–7 (citing *Rennard v. Woodworker's Supply, Inc.*, 101 Fed. Appx. 296, 307 (10th Cir. 2004))].   Defendants have challenged the viability of Dr. Werahera's claim for discrimination based on his performance evaluation in their Motion for Summary Judgment. *See* [Doc. 38 at 13–16].   Given the procedural posture of this case, this court finds that it is more appropriate to consider this issue in the context of summary judgment and thus **DENIES** the Motion to Dismiss in this regard.

### B.    Hostile Work Environment

To state a cognizable claim for discrimination under Title VII based on a hostile work environment theory, Dr. Werahera must aver sufficient facts, taken as true, to establish four elements: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on his national origin, race, or religion; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of

the plaintiff's employment and created an abusive working environment.  *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).  A plaintiff must allege facts showing the work environment "is both subjectively *and* objectively hostile or abusive" under this standard.  *Id.* (internal quotation marks and brackets omitted).  "[P]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish an objectively hostile or abusive work environment, though these two grounds "are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute."  *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quotation marks and ellipses omitted).

Finally, Title VII does not establish "a general civility code" for the workplace.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Morris v. City of Colorado Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (collecting cases).  Accordingly, "the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."  *Id.* at 664.  "Properly applied, [the standards for hostile work environment claims] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotations omitted).

Defendants argue that none of the conduct alleged by Dr. Werahera shows that Defendants acted with any hostility toward Plaintiff at all, let alone because of his national origin, race, or religion.  *See* [Doc. 23 at 5].  Defendants also argue that, even accepting as true Plaintiff's allegations regarding the basis for his negative performance evaluation or that he was deprived of

donor funds based on his being "an older male of Asian descent," *see* [Doc. 1 at ¶¶ 82, 88, 102–08], such allegations do not rise to the level of "extreme conduct that is severe or pervasive so as to state a claim for hostile work environment." [Doc. 23 at 5–6]; *see also* [Doc. 32 at 4–5].

Dr. Werahera disagrees, arguing that he has adequately pled "detailed facts alleging that he is being subjected to a pervasive work environment of repeated and ongoing abuse because of his religion (Buddhism) and national origin (Sri Lankan)." [Doc. 30 at 9]. Specifically, Dr. Werahera contends that he "has been subjected to constant menacing behavior from his superiors, who have publicly and privately ridiculed him and threatened him with termination for a completely fabricated reason," and "Defendants' actions have inhibited Plaintiff's ability to continue his groundbreaking prostate cancer research." [Doc. 30 at 9]; *see also* [Doc. 1 at ¶¶ 96–100].

Defendants have again challenged the viability of Plaintiff's hostile work environment claim in their Motion for Summary Judgment. *See* [Doc. 38 at 11–13]. Given the procedural posture of this case, this court finds that it is more appropriate to consider this issue in the context of summary judgment and thus **DENIES** the Motion to Dismiss in this regard.

## II.    Counts II, III, and IV Against the Board of Regents

As to the remaining claims against the Board of Regents under the ADEA and Section 1983—Counts II, III, and IV—Defendants argue that the Board is entitled to sovereign immunity under the Eleventh Amendment, and therefore those claims should be dismissed. The court agrees.

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). This prohibition includes suits alleging

a violation of the ADEA. *See Migneault v. Peck*, 204 F.3d 1003, 1004 (10th Cir. 2000). Further, it is well-settled that the University of Colorado is a state entity capable of claiming Eleventh Amendment immunity. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) ("[T]he University of Colorado is an arm of the state . . ."); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989).

Dr. Werahera appears to dispute, however, whether the Board of Regents, as the University's governing body, similarly constitutes an "arm of the state" such that it can also claim sovereign immunity pursuant to the Eleventh Amendment. *See* [Doc. 23 at 7–8; Doc. 30 at 12–21]. Indeed, he spends the majority of his Response arguing that sovereign immunity does not apply to the Board because it is not an arm of the State, but rather a "political subdivision" thereof. *See* [Doc. 30 at 12–21]. Relatedly, Dr. Werahera also requests that the court "conduct a hearing regarding [t]he Board's autonomy from the State, and allow the parties to exchange targeted discovery regarding the same." [*Id.* at 19]. Respectfully, the court is not persuaded.

Significantly, federal and state courts have already resolved the issue of whether the Board of Regents is an arm of the State of Colorado for the purposes of immunity under the Eleventh Amendment. *See, e.g.*, *Murray v. Colorado*, 149 Fed. Appx. 772, 774 (10th Cir. 2005) ("[T]he Colorado Board of Regents is, like the state itself, entitled to Eleventh Amendment immunity." (first citing *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 494 n. 3 (10th Cir.1998); then *Lujan v. Regents of Univ. of Cal.*, 69 F.3d 1511, 1522 (10th Cir. 1995); then *Hensel v. Office of Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994); and then *Hartman v. Regents of Univ. of Colo.*, 22 P.3d 524, 528 (Colo. Ct. App. 2000)); *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1081 (D. Colo. 2017) (finding that

sovereign immunity applies where the plaintiff named "the University of Colorado, through its Board, the Board of Regents of the University of Colorado," stating that "[t]he University of Colorado is an 'arm of the state' of Colorado, and therefore appears to be entitled to sovereign immunity, as preserved by the Eleventh Amendment"); *Churchill v. Univ. of Colo. at Boulder*, 285 P.3d 986, 998 (Colo. 2012) (finding the plaintiff's "claims against the Board of Regents as an entity were correctly barred under the doctrine of state sovereign immunity" because "[a]s an arm of the state (as opposed to a municipal corporation), the Board of Regents is entitled to the same immunities as the state itself" (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280–81 (1977))); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) (collecting cases). Although Dr. Werahera, in his Response, offers several reasons why he should be permitted to proceed, he has not cited any persuasive or binding precedent that would permit this court to ignore the Tenth Circuit's clear holdings otherwise. *See* [Doc. 30 at 12–21]. *See Dermansky v. Univ. of Colo.*, 445 F. Supp. 3d 1218, 1223 (D. Colo. 2020).[8]

---

[8] Defendants also argue that "[s]eparate and apart from the question of Eleventh Amendment Immunity, Section 1983 claims against the Board fail because it is not a 'person' under Section 1983," but rather an arm of the state. [Doc. 23 at 8 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63–68 (1989) and *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 365 (1990))]. In response, Dr. Werahera counters that the Board is not an arm of the state, but instead a "political subdivision" thereof. [Doc. 30 at 12]. Nevertheless, Dr. Werahera acknowledges that "a governmental agency asserting sovereign immunity must establish that it is an arm of the State"; and asserts that the Supreme Court's analysis in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), "as developed in subsequent cases, is now used to determine whether a governmental entity is an arm of the state for Eleventh Amendment purposes." [*Id.* at 13 (citations omitted)]. Dr. Werahera also relies heavily upon *Simon v. State Compensation Insurance Authority*, *see* [Doc. 30 at 13–21], wherein the Colorado Supreme Court identified "three dominant factors upon which federal courts consistently rely to determine whether a state-created entity is an arm of the state for the purposes of Eleventh Amendment immunity in federal courts." *Simon*, 946 P.2d 1298, 1302 (Colo. 1997) (identifying those factors as "(1) how state law characterizes the entity, (2) whether the entity is autonomous and free from the control of the state, and (3) whether the judgment against the entity would ultimately be paid

In sum, the court concludes that the Board of Regents enjoys sovereign immunity, and therefore dismissal without prejudice is appropriate as to Counts II, III, and IV for lack of subject matter jurisdiction. *See Smith v. Plati*, 56 F. Supp. 2d 1195, 1200 (D. Colo. 1999), ("[A] suit against a state is barred regardless of whether it seeks damages or injunctive relief." (citing *Cory v. White,* 457 U.S. 85, 91, (1982)), *aff'd,* 258 F.3d 1167 (10th Cir. 2001); *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal . . . must be without prejudice." (citation and internal quotations omitted)).

### III.    Counts III and IV Against Defendants Anderson and Thor

Dr. Werahera asserts Counts III and IV against Defendants Anderson and Thor (collectively, "Individual Defendants") in their official and individual capacities, pursuant to Section 1983, for deprivations of due process and equal protection, respectively, in violation of the Fourteenth Amendment. *See* [Doc. 1 at 24–25]. Defendants seek dismissal of these claims on sovereign immunity grounds and on the basis that Plaintiff fails to state a claim. *See* [Doc. 23 at 8–11]. Defendants also argue that Defendants Anderson and Thor are entitled to qualified immunity. [*Id.* at 11–12]. The court will address the arguments in turn.

---

by the state"). Dr. Werahera thus urges this court to apply the "*Mt. Healthy-Simon* multifactor test" to find that "[t]he Board is an [sic] 'political subdivision' rather than an 'arm of the state' and is thus a 'person' subject to suit for purposes of 42 U.S.C. § 1983." [Doc. 30 at 21]. Plaintiff's reliance on *Simon* and *Mt. Healthy* are misplaced. Indeed, those decisions were issued 45 and 25 years ago, respectively; and since that time, courts have resolved the issue of whether the Board of Regents is an arm of the State. As explained above, it is. *See, e.g., Churchill*, 285 P.3d at 998. Notably, the Colorado Supreme Court expressly relied upon *Mt. Healthy* in holding that a plaintiff's "claims against the Board of Regents as an entity were correctly barred under the doctrine of state sovereign immunity" because "[a]s an arm of the state (as opposed to a municipal corporation), the Board of Regents is entitled to the same immunities as the state itself." *Id.* (citing *Mt. Healthy,* 429 U.S. at 280–81).

A.   **Claims Seeking Monetary Damages Against Defendants Anderson and Thor in Their Official Capacities**

Defendants argue that, pursuant to the Eleventh Amendment, the Individual Defendants are protected from suit in their official capacities insofar as Plaintiff seeks monetary damages against them.  *See* [Doc. 23 at 8–9 ("[T]o the extent Plaintiff attempts to sue the official capacity employees for damages, he cannot do so.")].  The court agrees.  Eleventh Amendment immunity extends to suits "asserting a damage claim against state officers in their official capacities."  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  Indeed, it is generally understood that "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself."  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (citing *Ex parte Young,* 209 U.S. 123 (1908)).  Accordingly, with respect to Counts III and IV brought against Defendants Anderson and Thor in their official capacities, the court finds that Eleventh Amendment immunity applies to bar Plaintiff's claims for damages, and those claims must be dismissed without prejudice.[9]

---

[9] Plaintiff argues that Defendants Anderson and Thor "cannot assert Eleventh Amendment immunity against claims for *prospective injunctive relief*."  [Doc. 30 at 21 (emphasis added)].  However, as explained above, Defendants seek dismissal of Plaintiff's claims on sovereign immunity grounds only insofar as Plaintiff seeks *damages* under Counts III and IV, not prospective injunctive relief.  *See* [Doc. 23 at 9]; *see also Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("[T]he Eleventh Amendment does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law.").

**B.   Arguments as to Remaining Claims Under Counts III and IV**

Next, Defendants contend that Counts III (due process) and IV (equal protection) should be dismissed for failure to state a claim.  They also contend that the Individual Defendants are entitled to qualified immunity on the grounds that Plaintiff "has not stated a claim for constitutional violations, as he has not pled any deprivations of constitutionally protected interests and has not pled adverse employment action or other disparate treatment based on his race, age, or religion compared to other similarly-situated individuals."  [Doc. 23 at 12].  In the Response, Dr. Werahera argues that the Individual Defendants' "pleas for qualified immunity at this early stage of litigation are misplaced because the Complaint pleads sufficient facts that they have each violated Plaintiff's clearly-established constitutional rights."  [Doc. 30 at 25].

Defendants have again challenged the viability of Plaintiff's constitutional claims and invoked qualified immunity in their Motion for Summary Judgment.  *See* [Doc. 38 at 16–19]. Given the procedural posture of this case, this court finds that it is more appropriate to consider these issues in the context of summary judgment and thus **DENIES** the Motion to Dismiss in this regard.

**IV.   Leave to Amend**

Finally, in his Response, Dr. Werahera asserts that "to the extent that Plaintiff's complaint is deficient in any manner . . . same may be corrected by amendment," and he therefore requests leave to amend the Complaint accordingly.  [Doc. 30 at 1].  The court declines to grant leave to amend here.  First, leave to amend need not be granted absent the filing of a formal motion, and even a bare request, without any articulated grounds, are not sufficient.  *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also* D.C.COLO.LCivR 7.1 (stating

that parties must confer before filing motions, and motions "shall not be included in a response" and must be filed as a separate document).  Second, and more fundamentally, given the dismissals are based on legal issues—rather than sufficiency of the factual pleadings—this court is not persuaded that any amendments would correct the deficiencies discussed herein. Thus, absent any articulation of proposed amendments by proper motion, the court declines to preemptively granted Plaintiff leave to amend.

Nevertheless, to the extent that Plaintiff seeks leave to amend, he may file an appropriate motion **after a robust meet and confer with opposing counsel**. Given the fact that discovery has closed in this matter, *see* [Doc. 34], any such motion to amend must be filed no later than **August 30, 2022**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss [Doc. 23] is **GRANTED IN PART and DENIED IN PART**;

(2)     Count I is **DISMISSED without prejudice**, insofar as it relies on Plaintiff's (a) not being granted access to donor funds and (b) not being appointed Endowed Chair, because Dr. Werahera did not file an EEO charge within 300 days of when those incidents occurred;

(3)     Count I **REMAINS** insofar as it alleges (a) disparate treatment discrimination based on Plaintiff's 2020 performance evaluation and (b) a hostile work environment theory of discrimination;

(4)     Counts II–IV against Defendant Board of Regents are **DISMISSED without prejudice**, based on sovereign immunity;

(5)     Counts III and IV against Defendants Anderson and Thor in their official capacities for monetary damages are **DISMISSED without prejudice**, based on sovereign immunity;

(6)     Counts III and IV **REMAIN** insofar as they seek prospective injunctive relief against Defendants Anderson and Thor in their official capacities;

(7)     Counts III and IV **REMAIN** insofar as they are asserted against Defendants Anderson and Thor in their individual capacities; and

(8)     After a robust meet and confer, should Plaintiff believe himself to be in a position to, in good faith, allege facts that would plausibly support one or more of his dismissed claims, as described herein, Plaintiff shall seek leave to amend no later than **August 30, 2022**.

DATED:  August 24, 2022                           BY THE COURT:

                                                  _____
                                                  Nina Y. Wang
                                                  United States District Judge